[No. A054544. First Dist., Div. Two. Apr. 14, 1993.]

In re the Marriage of EDNA MERLE MOORE and JOSEPH FRANCIS FERRIE.
EDNA MERLE MOORE, Respondent, v.
JOSEPH FRANCIS FERRIE, Appellant.

COUNSEL

Alexander F. Eagle III for Appellant.

Constance C. Phipps for Respondent.

OPINION

KLINE, P. J.—Joseph Francis Ferrie appeals from a judgment holding his pension was a community property asset left unadjudicated by a prior judgment dissolving his marriage to respondent Edna Merle Moore, valuing the community interest in the pension at $397,836 and awarding respondent one half of that community interest. Appellant contends the court lacked authority to enter this judgment.

### STATEMENT OF THE CASE AND FACTS

In April of 1979, the parties separated after some 25 years of marriage. Husband had been working for United Airlines since December of 1965, at which time the couple lived in California; husband had moved to Ohio in October of 1977 and wife joined him in January of 1978. Wife returned to California when the couple separated.

On May 2, 1980, husband filed a complaint for divorce in Ohio. Wife filed a petition for dissolution of marriage in California on May 5, 1980. Husband effected service upon wife in accordance with Ohio law on May 29, 1980. Wife served husband in the California action on June 7, 1980, and also served and joined the United Airlines pension plans in the action. On the advice of counsel, husband made no appearance in the California action. On June 23, 1980, after a noticed hearing on wife's order to show cause at which husband did not appear, the California trial court found California had jurisdiction over the matter and ordered husband to make specified support payments. Default was entered against husband on July 17, 1980.

On August 22, 1980, wife moved to dismiss the Ohio action on grounds of lack of personal jurisdiction, insufficient process, forum non conveniens, and California's prior jurisdiction over the divorce; alternatively, wife moved the Ohio court to stay all proceedings pending a final decision in the California action. This motion was denied and judgment was subsequently entered for husband on December 12, 1980, wife having taken no further action in the case. Wife appealed the judgment on January 5, 1981.

On January 15, 1981, wife obtained a bench warrant for husband's arrest for failure to comply with the June 23, 1980, support order in the California action. On June 22, 1981, the California court entered interlocutory and final judgments of dissolution of marriage and orders dividing the parties' community property and awarding support. The court found it had jurisdiction to make these orders and, among other things, found the United Airlines pension earned by husband was community property and wife's interest in it was 24.5 percent of its total value.

On July 1, 1981, the Ohio Court of Appeals reversed the December 12, 1980, judgment on technical procedural grounds and remanded for further proceedings, but upheld the service of process on wife and found Ohio had jurisdiction over her. Wife again moved to dismiss the Ohio action, asserting lack of subject matter jurisdiction due to the intervening California judgment. The Ohio referee recommended granting this motion. Husband filed objections to the recommendation and on December 18, 1981, after a hearing at which counsel for both parties were present, the court rejected the referee's recommendation, corrected the prior judgment and ordered its entry nunc pro tunc retroactive to December 12, 1980. This judgment did not mention husband's pension. Wife appealed and on August 18, 1982, the Ohio Court of Appeals entered its decision affirming the judgment and finding Ohio had paramount jurisdiction over the parties because of the priority of the Ohio litigation over the California action.

Meanwhile, on November 13, 1981, husband had filed a motion to dismiss the California action. This motion was denied and husband appealed.[1] On April 24, 1984, Division Three of this court issued its opinion reversing the trial court on the ground that the Ohio court assumed jurisdiction over the subject matter before the California one and, by virtue of this priority, the Ohio judgment was entitled to full faith and credit in California. Wife's petition for rehearing was denied on May 24, 1984.

On September 20, 1984, husband moved to vacate and set aside all orders and judgments entered in the California action (except an order for sanctions which had been upheld on appeal). Wife opposed this motion on several grounds, including that the pension had not been divided in the Ohio judgment and remained subject to division in the California action, and that without the protection of the California court husband would not pay her spousal support and might dispose of pension assets before the pension could be divided. On October 24, 1984, husband's motion was granted.[2]

On February 14, 1991, having learned that husband was about to retire, wife filed an order to show cause in the still-pending California dissolution action seeking, among other things, division of husband's pension as an omitted asset.[3] The order to show cause was reissued on February 28, and a temporary restraining order issued restraining husband from drawing funds from the pension plans pending the hearing on this matter. The orders were personally served on husband in Massachusetts on March 4. On March 6, husband withdrew $360,277.60 from the direct account plan portion of his pension program and began receiving a monthly benefit of $3,633.24 from the fixed benefit retirement income plan (in which a lump sum retirement benefit is not permitted).[4]

Husband opposed wife's motion. After a hearing on April 1 the court held it had jurisdiction to divide the pension, which had existed at the time the

---

[1] On March 8, 1982, husband filed another motion to dismiss on grounds of lack of personal jurisdiction and a motion for reconsideration of the order then on appeal. The order denying these motions and granting wife's request for sanctions was affirmed on appeal.

[2] The court vacated and set aside the various orders enumerated in husband's motion. This list did not include the order joining the pension plans in the action and the action itself was apparently not dismissed.

[3] Wife's declaration stated that husband had offered to pay her $150,000 for her interest in the pension but that United Airlines would require a court order to disburse funds to her; that husband had not disclosed the pension to the Ohio court; that she had received no money from husband under the Ohio judgment; that she had received money for spousal support and attorney fees only because the California court entered the requisite orders and enforced them with wage assignments; and that husband had obtained an order in Ohio allowing him to offset against the sum owed wife under the Ohio judgment amounts paid under the California wage assignment which exceeded the support ordered in Ohio.

[4] Husband elected to receive a "life annuity with remainder" under which no benefits would be paid after his death, as opposed to a "50% contingent annuity" under which a lesser benefit

Ohio court dissolved the marriage but was not disposed of by the Ohio judgment. The matter was continued to June 26 for a hearing on valuation and division of the pension and husband was ordered not to withdraw funds from the pension pending further hearing or to in any way dispose of pension funds in his possession except for necessities of life. Husband filed a motion for reconsideration on May 29, which was granted at a hearing on June 26. On July 19, the court issued its statement of decision finding it had jurisdiction to divide the pension and ordering division of the community interest, which it determined to be $397,836.

Husband filed a timely notice of appeal on July 26, 1991.

## DISCUSSION

In *Henn v. Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10], the California Supreme Court held that a former spouse could maintain an action to establish her community property interest in her ex-husband's military pension which was not adjudicated in the final decree of dissolution. The court explained: "Under California law, a spouse's entitlement to a share of the community property arises at the time that the property is acquired. (Civ. Code, §§ 5107, 5108, 5110.) That interest is not altered except by judicial decree or an agreement between the parties. Hence 'under settled principles of California community property law, "property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is subject to future litigation, the parties being tenants in common meanwhile." ' " (26 Cal.3d at p. 330, quoting *In re Marriage of Brown* (1976) 15 Cal.3d 838, 850-851 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].)

*Henn* also found the former wife could not be collaterally estopped from litigating her community property right in the pension by the fact that she failed to assert this right when her entitlement to other community assets was adjudicated: "[T]he rule prohibiting the raising of any factual or legal contentions which were not actually asserted but which were within the scope of a prior action, 'does not mean that issues not litigated and determined are binding in a subsequent proceeding on a new cause of action. Rather, it means that once an issue is litigated and determined, it is binding in a subsequent action notwithstanding that a party may have omitted to raise matters for or against it which if asserted may have produced a different

would be paid to husband during his lifetime after which a monthly benefit would be paid to his surviving named "contingent annuitant."

Husband apparently also stopped payment on the March 1 check for spousal support he had paid pursuant to the Ohio judgment.

outcome.' Hence, the doctrine of collateral estoppel is not applicable here because [the former husband] failed to demonstrate that [the former wife] is relying on some specific factual or legal contention which would have been relevant to the adjudication of the parties' rights to the property distributed in the [dissolution] decree if it had been raised." (26 Cal.3d at p. 331, fn. omitted.)

 Husband contends the California court lacked jurisdiction to determine whether the pension was omitted from the Ohio judgment because wife's action constituted a collateral attack on the Ohio judgment. Husband is correct that the Ohio judgment is entitled to full faith and credit in California even if it was contrary to California's law or policy. (*Williams* v. *North Carolina* (1942) 317 U.S. 287, 293-294 [87 L.Ed. 279, 283, 63 S.Ct. 207, 143 A.L.R. 1273]; *Tyus* v. *Tyus* (1984) 160 Cal.App.3d 789, 793 [206 Cal.Rptr. 817].) This means that the Ohio judgment must be given the same effect in California as it would be given in Ohio. (*Williams* v. *North Carolina*, *supra*, 317 U.S. at pp. 293-294 [87 L.Ed. at p. 283]; *Thomas* v. *Washington Gas Light Co.* (1980) 448 U.S. 261, 270 [65 L.Ed.2d 757, 766, 100 S.Ct. 2647].) Wife's action, however, does not seek to attack the Ohio judgment or give it anything less than full credit, but rather to dispose of a property interest not adjudicated by the Ohio court. As explained in *Henn*, wife's entitlement to a share of a community property asset arose at the time the asset was acquired and could not be altered except by judicial decree or agreement between the parties. (26 Cal.3d at p. 330.) An action to divide an omitted asset does not seek to modify or reopen the previous final judgment (*Huddleson* v. *Huddleson* (1986) 187 Cal.App.3d 1564, 1573 [232 Cal.Rptr. 722]; *Casas* v. *Thompson* (1986) 42 Cal.3d 131, 141-142, fn. 4 [228 Cal.Rptr. 33, 720 P.2d 921]) but to divide a property interest that "arose independent of and predate[d] the original decree of dissolution and property settlement." (*Henn* v. *Henn*, *supra*, 26 Cal.3d at p. 330.)[5]

Contrary to husband's apparent assumption, wife did not lose her community property interest in the pension when the parties moved to Ohio. ██ Community property does not lose its character by virtue of a move to a common law state. (*In re Kessler's Estate* (1964) 177 Ohio St. 136 [29 Ohio.Ops.2d 348, 203 N.E.2d 221, 222-223] [California community property remained community property after decedent and wife moved to Ohio]; Leflar et al., American Conflicts of Law (4th ed. 1986) § 234, p. 649; Scoles & Hay, Conflict of Laws (1984) § 14.13, p. 465.)

---

[5]That the judgment which omitted a community property asset was rendered in a state other than California does not in and of itself preclude subsequent division of the asset by a California court. (*Berry* v. *Berry* (1989) 216 Cal.App.3d 1155 [265 Cal.Rptr. 338] [Arizona divorce followed by California action to divide omitted military pension].)

Accordingly, if the Ohio court did not adjudicate the parties' interests in the pension, wife retained her interest in the community property portion as a tenant in common. Division of this asset by the California courts does not deprive the Ohio judgment of full faith and credit, because that judgment did not purport to deal with the pension. (See *Armstrong* v. *Armstrong* (1956) 350 U.S. 568 [100 L.Ed. 705, 76 S.Ct. 629] [no violation of full faith and credit where Ohio awarded alimony after Florida decree dissolved marriage without acting on issue of alimony].)

■ Husband contends the Ohio judgment did not in fact omit the pension, but rather treated it as his separate property and considered it in awarding wife alimony in accordance with Ohio law.[6] Ohio law requires an equitable division of marital property; at the time of the parties' divorce, section 3105.18 of the Ohio Revised Code listed among factors that must be taken into account in dividing property and setting sustenance alimony " '[t]he retirement benefits of the parties.' " (*Cherry* v. *Cherry*, *supra*, 421 N.E.2d 1293, 1298, quoting Ohio Revised Code § 3105.18, subd. (B)(3); *Hoyt* v. *Hoyt* (1990) 53 OhioSt.3d 177 [559 N.E.2d 1292, 1294-1295]; *Lemon* v. *Lemon* (1988) 42 OhioApp.3d 142 [537 N.E.2d 246, 248-249].) Also at that time, when a trial court's order was silent, Ohio appellate courts presumed the court addressed the factors listed in Ohio Revised Code section 3105.18. (*Cherry* v. *Cherry*, *supra*, 421 N.E.2d at p. 1300.)[7] In support of his argument, husband relies on the declaration of John Hix, an Ohio divorce attorney, who states that husband's pension plan is considered his separate property under Ohio law and opines that although the pension was not mentioned in the Ohio judgment, it was taken into consideration in setting alimony payments (which Hix viewed as generous by Ohio standards) and not omitted from the judgment.

We cannot accept husband's position. ■ In applying the doctrine of full faith and credit, courts "should not place upon the judgment a construction which is out of harmony with the decisions of the highest court of the state in which it was rendered." (*In re Kimler* (1951) 37 Cal.2d 568, 572 [233 P.2d 902].) ■ Under Ohio law, as interpreted by the Supreme Court of

---

[6]Prior to statutory changes effective in 1991, "alimony" in Ohio was "composed of two separate elements—alimony which constitutes a division of the marital assets and liabilities, and alimony consisting of periodic payments for sustenance and support." (*Cherry* v. *Cherry* (1981) 66 OhioSt.2d 348 [20 Ohio.Op.3d 318, 421 N.E.2d 1293, 1297].) The new statutes replace the concept of "alimony" with separate provisions for division of "marital property" (Ohio Rev. Code, § 3105.171) and award of "spousal support" (Ohio Rev. Code, § 3105.18).

[7]Subsequent decisions apparently changed this rule by requiring the trial court to "indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." (*Kaechele* v. *Kaechele* (1988) 35 OhioSt.3d 93 [518 N.E.2d 1197, 1201]; *Schneider* v. *Schneider* (1989) 61 OhioApp.3d 164 [572 N.E.2d 221, 223-224].)

Ohio, one-half of the California community property portion of the United Airlines pension became wife's outright upon the dissolution of her marriage to husband. (*In re Kessler's Estate, supra,* 203 N.E.2d at pp. 223-224.) Contrary to husband's claim, the failure of the Ohio judgment to award wife one-half of the community portion of the pension, as required under Ohio precedent, demonstrates it is an omitted asset.

By allowing wife to maintain an action to divide the unadjudicated community property asset, we give the Ohio judgment no less effect than it would have in Ohio. Neither the parties nor this court have been able to discover Ohio authority addressing the question of remedy when an Ohio judgment fails to dispose of a California community asset. In this situation, we assume Ohio law "is not out of harmony with ours and thus we look to our law for a solution of the problem." (*Gagnon Co., Inc.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 454 [289 P.2d 466]; see also *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 314 [195 Cal.Rptr. 90]; *Bierl* v. *McMahon* (1969) 270 Cal.App.2d 97, 101 [75 Cal.Rptr. 473]; Evid. Code, § 311, subd. (a).) Since Ohio follows the rule that community property remains community property despite a move to Ohio, we must assume it would also accept the corollary principle that unadjudicated community property assets remain jointly owned by the parties as tenants in common after their divorce.[8]

■ Husband also argues that the earlier California proceedings in this case are res judicata and law of the case on the issue of the United Airlines pension. In these earlier proceedings, wife argued against dismissal of the California dissolution action and against dismissal of the orders entered in that action on several grounds, including that the United Airlines pension had not been divided by the Ohio court. Husband contends the subsequent decision of this court conclusively determined that Ohio courts, and only Ohio courts, have jurisdiction over the United Airlines pension. The earlier

---

[8]No Ohio authority has been discovered addressing the more general question of how to treat jointly held property left unadjudicated after a divorce judgment. Ohio law does not allow the reopening or modification of a final divorce judgment to dispose of property omitted from the judgment, viewing the divorce judgment as binding on all matters that were or could have been litigated and adjudicated. (*Bean* v. *Bean* (1983) 14 OhioApp.3d 358 [471 N.E.2d 785, 790]; see *Mettler* v. *Mettler* (1988) 61 OhioApp.3d 14 [572 N.E.2d 127, 128].) Accordingly, it appears that under Ohio law, if a divorce decree becomes final without having disposed of certain property, the parties are simply left with the status quo (see *Bean* v. *Bean, supra,* 471 N.E.2d at p. 790), meaning an unadjudicated asset remains the property of the party in whose name it is held. This does not mean, however, that husband is correct in assuming the pension became his separate property after the Ohio divorce. If an Ohio divorce decree failed to dispose of an asset to which title was held jointly by the spouses, Ohio presumably would have to allow a subsequent partition action to divide the parties' interests. Community property is a form of jointly held property that must be so divided.

proceedings in this case, however, did not address the viability of a separate partition action to divide the California community property portion of the United Airlines pension. Indeed, it is entirely possible that the very reason Division Three decided the trial court should have dismissed the California dissolution action notwithstanding the Ohio court's failure to address the United Airlines pension is that it believed wife could bring a separate action to partition the community portion of the pension. Since it is not possible to ascertain what treatment, if any, the earlier California proceedings gave to the United Airlines pension, those proceedings cannot be urged as a bar in this case. (*Henn* v. *Henn, supra,* 26 Cal.3d at p. 332.)

█ Finally, husband urges the trial court incorrectly valued the pension in that it considered the pension as remaining community property until the parties' separation on April 15, 1979, rather than as losing its community property character when wife left California on January 15, 1978. Based on the parties' stipulation as to the value of the pension, if the court had not viewed the portion of the pension earned during the 15 months the parties lived in Ohio as community property, the amount of the community property interest would have been $37,394 less than the amount divided by the trial court ($360,442 rather than $397,836).

The trial court apparently chose the date of separation as the correct date for valuation of the community property portion of the pension on the basis of Ohio law viewing pensions as marital assets subject to division upon divorce. (*Lemon* v. *Lemon, supra,* 537 N.E.2d at pp. 248-249; Ohio Rev. Code § 3105.18.) The term "marital asset" as used in the Ohio cases, however, simply refers to property earned during the marriage; it is not equivalent to "community property" in which spouses each own an undivided half interest in property accumulated during the marriage from the time the property is acquired. (See *Henn* v. *Henn, supra,* 26 Cal.3d at p. 330.) Upon divorce, Ohio courts are not required to make an *equal* division of property but only an *equitable* division. (*Cherry* v. *Cherry, supra,* 421 N.E.2d at pp. 1297-1299.) In the present case, wife's action was to secure an interest in community property she continued to "own" after the Ohio decree. While the move to Ohio could not divest wife of the community property interest she accrued while the parties lived in California, there is no basis for the trial court's assumption that wife continued to accrue an ownership interest under California law once the parties changed their domicile to a common law state. Accordingly, the trial court erred in

determining the value of the pension as of the date of the parties' separation.[9]

The judgment is modified to reflect that the community interest in husband's pension is $360,442 and, as so modified, affirmed.[10] Wife shall recover her costs on appeal.

Smith, J., and Benson, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 29, 1993.

---

[9]Wife sought to divide the pension by filing a motion in the dissolution action that remained pending (with the pension plan joined as a party claimant) after Division Three set aside the trial court's judgment in 1984. Husband correctly observes that Civil Code section 4353 did not provide authority for her doing so. Civil Code section 4353 alters the rule that division of a community property asset may be achieved only in a separate action (*Henn* v. *Henn*, *supra*, 26 Cal.3d at p. 332; *In re Marriage of Graves* (1988) 198 Cal.App.3d 1047, 1052 [244 Cal.Rptr. 110]) by affording trial courts continuing jurisdiction to award such assets. The statute, however, authorizes the filing of a motion in the same action that originally failed to divide the asset in question. In the present case, the judgment that allegedly omitted the pension is the one rendered in Ohio; the judgment of the California trial court (which did divide the pension) was set aside on appeal.

As a technical matter, wife's motion probably should not have been filed in the dissolution action at all, since the case should have been dismissed after Division Three of this court issued its opinion on the prior appeal. After Division Three found the Ohio courts had jurisdiction and set aside the California trial court's judgment, there was nothing left for the California trial court to do with respect to the parties' dissolution and the action should have been dismissed. That the case was not dismissed, however, was more husband's fault than wife's. Under *Henn*, wife was required to have her interest in a community property asset omitted from a prior judgment of dissolution adjudicated in a "separate action." This California action is obviously separate from the one in which the divorce judgment was rendered. If wife would otherwise be entitled to secure her community property interest, to deny her recovery solely because she acted in the wrong "separate action" would elevate form over substance.

[10]By accepting the parties' stipulation on value of the pension, we do not intend to imply a holding as to whether the proper date for valuation should have been the date wife left California or the date husband left.