[No. H019741. Sixth Dist. July 13, 2000.]

COUNTY OF MONTEREY, Plaintiff and Appellant, v.
ELIU VARGAS BANUELOS, Defendant and Respondent.

[No. H019750. Sixth Dist. July 13, 2000.]

In re the Marriage of LINDA and VICTOR A. LAZZERONI.
LINDA LAZZERONI, Appellant, v.
VICTOR A. LAZZERONI, Respondent.

[No. H019751. Sixth Dist. July 13, 2000.]

In re the Marriage of KAREN and DENNIS MORGAN.
KAREN E. MORGAN, Appellant, v.
DENNIS MORGAN, Respondent.

[No. H019752. Sixth Dist. July 13, 2000.]

In re the Marriage of GLORIA and RAYMOND LOPEZ.
GLORIA LOPEZ, Appellant, v.
RAYMOND LOPEZ, Respondent.

## COUNSEL

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Ann White and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Respondent Eliu Banuelos in No. H019741.

No appearance for Respondent Victor Lazzeroni in No. H019750.

No appearance for Respondent Dennis Morgan in No. H019751.

No appearance for Respondent Raymond Lopez in No. H019752.

## OPINION

**PREMO, Acting P. J.**—For purposes of briefing, oral argument, and decision, we are considering together four appeals by the County of Monterey (County) from orders denying motions for seek-work orders. (Fam. Code, § 4505.)[1] At the root of each case is a judgment or an order for child support arrearages. The trial court reasoned that the underlying debts were ordinary civil obligations rather than ongoing child support obligations. (*Crider v. Superior Court* (1993) 15 Cal.App.4th 227, 231-232 [18 Cal.Rptr.2d 757].) Since seek-work orders are enforceable by contempt (*Moss v. Superior Court* (1998) 17 Cal.4th 396, 420 [71 Cal.Rptr.2d 215, 950 P.2d 59]) and the Constitution prohibits imprisonment in a civil action for debt (Cal. Const., art. I, § 10), it concluded that, under the circumstances, the sought-after seek-work orders were indirect attempts to enforce a civil debt by contempt. County contends that the reasoning in *Crider* has been superceded by statute. We agree and therefore reverse the orders.[2]

### IN RE MARRIAGE OF LOPEZ

A June 1978 interlocutory judgment of dissolution ordered Raymond Lopez to pay child support of $100 per month for each of three children. The

---

[1]Family Code section 4505 provides: "A court may require a parent who alleges that the parent's default in a child or family support order is due to the parent's unemployment to submit to the appropriate child support enforcement agency or any other entity designated by the court, including, but not limited to, the court itself, each two weeks, or at a frequency deemed appropriate by the court, a list of at least five different places the parent has applied for employment." (Stats. 1992, ch. 162, § 10, p. 598, operative Jan. 1, 1994.)

[2]In each of the cases under consideration, there is no appearance by the party against whom the motion was directed.

children received public assistance, and a later order required Lopez to make his child support payments through the office of the district attorney. By 1981, Lopez had arrearages of $3,700 and a modified judgment was entered to that effect. The youngest child was emancipated in 1995. Thus, at the time of the November 20, 1998, seek-work hearing, there existed no ongoing child support and the underlying obligation involved unspecified arrearages only. The trial court denied County's motion on January 3, 1999.

### In re Marriage of Lazzeroni

A mother receiving public assistance assigned her child support rights to County. In the dissolution of marriage proceeding, Victor A. Lazzeroni was ordered to pay child support of $200 per month (commencing June 1, 1984) and $306 per month (commencing July 31, 1990) for one minor child through the office of the district attorney. The child was emancipated in February 1997. Thus, at the time of the December 11, 1998, seek-work hearing, there existed no ongoing child support and the underlying obligation involved unspecified arrearages only. The trial court denied County's motion on January 14, 1999.

### County of Monterey v. Banuelos

County sued Eliu Vargas Banuelos to establish paternity and child support. There were two minor children who had received public assistance since December 1993. County recovered a judgment on October 2, 1995, for arrearages of $4,266 payable at $119 per month and for ongoing child support of $402 per month for each child. It filed a supplemental complaint on August 10, 1998, seeking to update the arrearages and establish child support for two additional, later-born children. The record, however, does not indicate that County recovered a judgment on the supplemental complaint. In any event, at some point before the January 8, 1999, seek-work hearing, Banuelos and the mother reconciled. Thus, at the time of the seek-work hearing, there existed no ongoing child support and the underlying obligation involved unspecified arrearages only. The trial court denied County's motion on January 14, 1999.

### In re Marriage of Morgan

A May 1983 interlocutory judgment of dissolution ordered Dennis Morgan to pay family support of $250 per month for four months and then $450 per month. The family support terminated in September 1987 and became child support for one child of $250 per month. Morgan was cited for contempt for failure to pay child support in 1986 and 1987. The child was

emancipated in 1991. Thus, at the time of the January 8, 1999, seek-work hearing, there existed no ongoing child support and the underlying obligation involved unspecified arrearages only. The trial court denied County's motion on January 14, 1999.

## DISCUSSION

County proceeded under the authority of former Welfare and Institutions Code sections 11350, 11350.1, and 11475.1, which generally "authorize the local district attorney to prosecute actions for child support in the name of the county on behalf of the child or children of the custodial parent, and to recover arrearages in support payments." (*In re Marriage of Comer* (1996) 14 Cal.4th 504, 512, fn. 3 [59 Cal.Rptr.2d 155, 927 P.2d 265].) Though former section 11350 speaks in terms of prosecuting such actions to secure reimbursement for public assistance, former section 11475.1 makes clear that receipt of public assistance is not a predicate to the district attorney's authority under these statutes.[3]

The above sections were in effect when the trial court heard County's motions. They were repealed, effective January 1, 2000. (Stats. 1999, ch. 478, §§ 8, 9, 25.) Similar provisions were added to the Family Code, however. (See Fam. Code, §§ 17402, 17404, 17400; Stats. 1999, ch. 478, § 1.)

In *Crider v. Superior Court, supra,* 15 Cal.App.4th 227, a father sought relief from an order holding him in contempt for failing to make installment payments under a stipulated judgment ordering him to reimburse the county for public assistance benefits provided to his children. The court annulled the judgment.

The court held that a judgment ordering a noncustodial parent to reimburse the county for public assistance payments made for the benefit of the parent's children pursuant to former Welfare and Institutions Code section 11350 is not an order for child support but a civil action for debt and, as such, is not enforceable by contempt. (*Crider v. Superior Court, supra,* 15 Cal.App.4th at pp. 231-232 ["An AFDC reimbursement order under section 11350 is not an order for child support. Although reimbursement under section 11350 is premised on the noncustodial parent's statutory duty to

---

[3]Former Welfare and Institutions Code section 11475.1, subdivision (a), provided: "The district attorney shall take appropriate action, both civil and criminal, to establish, modify, and enforce child support and when appropriate enforce spousal support orders when the child is receiving public assistance, including Medi-Cal, and, when appropriate, to take the same actions on behalf of a child who is not receiving public assistance, including Medi-Cal." (Stats. 1997, ch. 601, § 4.)

support his children [citation], the funds reimbursed under section 11350 are not used to support the noncustodial parent's children, but rather to alleviate the burden on taxpayers and ensure that, as the numbers of needy children rise, benefits to them will not be reduced."].)

The court reasoned: "The common law analysis of family support orders does not fit a judgment under section 11350 for reimbursement of AFDC payments made when there was no subsisting order for support. Unlike a family support order, the stipulated judgment orders reimbursement in a sum certain, $2,616. The coincidence that the stipulated judgment calls for reimbursement payments in monthly installments does not alter the fact that the judgment is for a fixed amount. Moreover, the judgment does not create an indefinite commitment, as does an order for spousal or child support. Furthermore, the money judgment for reimbursement, like any other judgment, is subject neither to modification for changed circumstances nor is it terminable upon petitioner's death. [Citation.] Most significantly, the section 11350 reimbursement order here enforces a duty to repay a statutorily created debt, not a duty owed to the spouse or child." (*Crider v. Superior Court, supra*, 15 Cal.App.4th at pp. 233-234.)

█ Here, the trial court similarly reasoned that, because the underlying obligations were for arrearages only (and presumably because the moving party was County rather than a custodial parent), the amounts involved were for civil debts owing County given that they were (1) for a fixed amount, (2) not for an indefinite commitment, and (3) not subject to modification or termination.

We observe that *Crider* involved the pure reimbursement situation. There was no underlying child support order, and the county had sued the parent directly for reimbursement, as in County's action against Banuelos. And dictum in *Crider* suggests that a different result might obtain in a situation where a noncustodial parent was subject to a court order for child support at the time a county paid public assistance. (*Crider v. Superior Court, supra*, 15 Cal.App.4th at p. 232, fn. 5.)

County's cases against Lopez, Lasseroni, and Morgan pose the circumstance left unanswered by *Crider* (underlying court orders). But since County's action against Banuelos is akin to the *Crider* situation (no underlying court order), we address the vitality of *Crider* rather than address the question *Crider* left unanswered.

At the time of the 1993 *Crider* decision, a reimbursement order under Welfare and Institutions Code section 11350 and a child support order were distinct.

As observed by the *Crider* court, former Welfare and Institutions Code section 11350 then provided for a debt running in favor of the county rather than an obligation to a spouse or child. The section read: "In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the noncustodial parent or parents shall be obligated to the county for an amount [specified in a court order or an amount which would have been specified in a court order less amounts actually paid]." (Stats. 1991, ch. 110, § 20, p. 614.) Correspondingly, former Civil Code section 4390, subdivision (h) defined "support" as "an obligation owing on behalf of a child, spouse, or family; where appropriate, it also refers to past due support or arrearage." (Stats. 1989, ch. 1359, § 1, p. 5752.)

But the landscape changed after *Crider*. Effective in 1994, the Legislature redefined "support" in Family Code section 150 as follows: " 'Support' refers to a support obligation owing on behalf of a child, spouse, or family, or an amount owing pursuant to Section 11350 of the Welfare and Institutions Code. It also includes past due support or arrearage when it exists. . . ." (Stats. 1992, ch. 162, § 10, p. 468, operative Jan. 1, 1994, amended by Stats. 1993, ch. 219, § 82, pp. 1595-1596.)

Thus, child support now includes amounts owing to a county under former Welfare and Institutions Code section 11350, whether the amounts are arrearages or not.[4]

Also effective in 1994, the Legislature amended the contempt provisions of the Code of Civil Procedure consistently with the expanded definition of child support. Code of Civil Procedure section 1218, subdivision (c) provides: "In any court action in which a party is found in contempt of court for failure to comply with a court order pursuant to the Family Code, or Sections 11350 to 11476.1, inclusive, of the Welfare and Institutions Code, the court shall order the following: . . ." (Added by Stats. 1993, ch. 745, § 1, pp. 4161-4162; Stats. 1993, ch. 746, § 1, p. 4163.)[5]

Thus, the contempt statutes implicitly recognize that amounts owing a county for child support are enforceable by contempt.

Moreover, and also in 1994, the specific seek-work statute in question, Family Code section 4505, was carried into the Family Code from the Civil

[4]Family Code section 150 was not amended to account for the 1999 conversion of former Welfare and Institutions Code section 11350 into Family Code section 17402.

[5]Code of Civil Procedure section 1218 was also not amended to account for the 1999 conversion of the former Welfare and Institutions Code sections into the Family Code sections.

Code (*ante*, fn. 1) in an amended form. "Section 4505 continues former Civil Code Section 4709 without substantive change. This section has been expanded to apply to all child or family support orders. Former Civil Code Section 4709 applied only to orders issued under the child support title of the former Family Law Act." (23 Cal. Law Revision Com. Rep. (1993), p. 469.)[6] Thus, the amended form of the statute (applicable to all child or family support orders) is consistent with the new definition of child support (taking in Welfare and Institutions Code orders) and a county's concomitant authority to enforce a Welfare and Institutions Code order in the same manner that a custodial parent can enforce a Family Code order (recognized by the amended contempt statute).

Similarly, and also in 1994, the general provision for enforcement of Family Code orders, Family Code section 4500, was carried into the Family Code from the Civil Code in an amended form. And the amended form also is consistent with the new definition of child support and a county's concomitant authority to enforce a Welfare and Institutions Code order in the same manner that a custodial parent can enforce a Family Code order. Family Code section 4500 provides: "An order for child, family, or spousal support that is made, entered, or enforceable in this state is enforceable under this code, whether or not the order was made or entered pursuant to this code." (Stats. 1992, ch. 162, § 10, p. 597, operative Jan. 1, 1994.) "Section 4500 continues former Civil Code Section 4385 without substantive change. References to 'this code' have been substituted for the former references to 'this chapter' and 'this part,' which formerly referred to the provisions for enforcement found in the former Family Law Act." (23 Cal. Law Revision Com. Rep., *supra*, p. 467.)

And finally, we note once more that the sections of the Welfare and Institutions Code at issue have been carried into the Family Code as of this year, evincing yet again the Legislature's determination that child support is an integrated issue whether it is due and payable to a custodial parent or to a county.

From these post-*Crider* statutory changes, we conclude that the Legislature has nullified *Crider*. Since 1994, child support has included amounts due counties for reimbursement of public assistance or otherwise under their

---

[6]Former Civil Code section 4709 provided: "A court may require a parent who alleges that his or her default *in an order issued pursuant to this title* is due to his or her unemployment to submit to the appropriate child support enforcement agency or any other entity designated by the court, including, but not limited to, the court itself, each two weeks, or at a frequency deemed appropriate by the court, a list of at least five different places he or she has applied for employment." (Stats. 1988, ch. 900, § 2, p. 2866, italics added; Stats. 1992, ch. 162 § 3, p. 464, repealed operative Jan. 1, 1994.)

child support enforcement obligations. And it includes arrearages (fixed amounts that are no longer ongoing or not modifiable or not terminable). And counties may enforce such obligations in the same manner as custodial parents, including enforcement via the contempt remedy.

It follows that a seek-work order is available in the cases under consideration and County was entitled to the trial court's discretionary determination unencumbered by *Crider.*

## DISPOSITIONS

The orders denying County's motions for a seek-work order are reversed. The matters are remanded, and the trial court is directed to hear the motions on the merits. Costs for the appeals are awarded to County.

Bamattre-Manoukian, J., and Wunderlich, J., concurred.